# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-1278V
### UNPUBLISHED

| | |
|---|---|
| SHARON K. DIXON,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: May 15, 2023<br><br>Special Processing Unit (SPU);<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA); Six Month<br>Severity Requirement |

*David Alexander Tierney*, Rawls Law Group (Richmond), Richmond, VA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION DISMISSING CASE**[1]

On September 28, 2020, Sharon K. Dixon ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 21, 2018. Petition at 1.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access..

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On July 27, 2022, Respondent filed a Motion to Dismiss, contending that Petitioner could not meet the Vaccine Act's "severity" requirement. Petitioner opposes the motion (ECF No. 28 ("Opp."), and Respondent filed a reply on September 28, 2022. ECF No. 30.

For the reasons discussed below, I find Respondent's motion meritorious, and therefore dismiss the claim.

## I.  Procedural History

Almost two years after the claim's initiation, Respondent filed his Rule 4(c) Report in July 2022, arguing that compensation is not appropriate in this case, because Petitioner could not establish that she suffered the residual effects of her SIRVA for more than six months. Respondent's Rule 4(c) Report ("Report"), ECF No. 25, at 8-9. Accordingly, a motion to dismiss accompanied the Rule 4(c) Report. ECF No. 26. As noted above, Petitioner opposes dismissal.

## II.  Factual Background

Petitioner received the flu vaccine on September 21, 2018, at her primary care provider. Ex. 3 at 12, 399.[3] Three days later, she contacted her primary care provider on September 24, 2018, reporting that her arm was sore following the vaccination. Further, Petitioner reported that her arm hurt from the shoulder to the elbow, "especially when she lifts her arm up." Ex. 3 at 399-400.

Petitioner again complained of arm pain following her flu vaccine on October 8, 2018. *Id.* at 380. Petitioner was advised, however, that the pain would resolve on its own, and it was recommended she attempt conservative treatments such as ice packs, Tylenol, and ibuprofen. *Id.* Petitioner again saw her treater on October 19, 2018, reporting "constant" arm pain since her vaccination, and that she was "almost unable to lift her left arm due to pain." *Id.* at 379-80. A five-day course of prednisone was prescribed. *Id.* at 379.

On November 7, 2018, Petitioner returned to her primary care physician, again reporting left shoulder and arm pain since her receipt of the flu vaccine. Ex. 3 at 334. An examination showed tightness in her upper trapezius and tenderness upon palpitation. *Id.* at 335-36. Petitioner's strength was normal, but she exhibited difficulty moving her shoulder over her head. *Id.* at 336. She was assessed with cross syndrome or "impingement issue". *Id.*

---

[3] Petitioner had no history of prior left shoulder or arm pain. Ex. 3 at 467, 536.

Petitioner subsequently presented to William Latimer, PA-C, at Indiana University Health Orthopedics, for ongoing left shoulder pain. Ex. 4 at 6. An examination noted full rotator cuff strength and range of motion (with pain), and anterior joint line tenderness. *Id.* An x-ray was unremarkable, and she was diagnosed with impingement syndrome. *Id.* A cortisone injection was administered as well. *Id.* She began physical therapy on November 16, 2018. Ex. 5 at 25.

Records from the follow-up with PA Latimer on December 5, 2018, stated Petitioner's pain and range of motion had improved partially. Ex. 4 at 4. At that time, she still experienced pain with overhead movements. *Id.* But by January 2, 2019, Petitioner was discharged from physical therapy after ten sessions. Ex. 5 at 6-8. She now rated her pain as one out of ten at rest, and three out of ten with activity. *Id.* at 6. She also had improved range of motion, strength, and posture, although still found it difficult to engage in overhead tasks. *Id.*

On January 16, 2019, Petitioner had an annual physical. Ex. 3 at 279. She requested a refill of a meloxicam prescription she was taking for her shoulder pain at that time. An examination revealed tenderness when her shoulder was palpated, but full range of motion and strength. *Id.* at 280. She was assessed with osteoarthritis "with likely impingement." *Id.*

Petitioner continued to report some residual pain at a follow-up appointment with PA Latimer on February 11, 2019. Ex. 4 at 2. An examination showed a full range of motion and strength, but also complained of minor pain and anterior joint line tenderness. *Id.* A second steroid injection was administered at that time, and she was directed to seek follow-up visits as needed. *Id.* It was now almost five months from the date of vaccination.

The medical record thereafter – for the next approximately eighteen months – includes numerous doctor's visits, but *no additional reports* of shoulder pain. These include:

- A visit to urgent care on March 23, 2019, for treatment of acute sinusitis and lower abdominal pain (Ex. 3 at 221-22);

- A visit to her primary care physician on March 25, 2019, for right flank pain and suprapubic pain for the past five days (Ex. 3 at 220-22);

- Hospitalization from April 4, 2019 to April 5, 2019 for diverticulitis (Ex. 3 at 168);

3

- A follow-up appointment regarding diverticulitis and to discuss hypertension, high blood pressure, and mild anxiety on April 26, 2019 (Ex. 3 at 130-32);

- An appointment on July 16, 2019 to discuss diverticulitis and hypertension wherein Petitioner "feels well overall and has no major acute complaints at this time" (Ex. 3 at 82); and

- A follow-up appointment on January 17, 2020 for right sided back pain, and a persistent "tickle in throat" since being sick in December that also lists osteoarthritis of the left shoulder as a chronic problem (Ex. 3 at 22-24).

During these visits, shoulder pain (other than osteoarthritis) is not discussed or listed as a chronic problem. And there is no record in this lengthy period of time when Petitioner complained of shoulder issues or sought treatment specific to such problems – in contrast to her history between the September 2018 vaccination and her February 2019 visit with PA Latimer, which reveals numerous specific visits for treatment of allegedly vaccine-related shoulder pain.

Petitioner next sought care for shoulder pain on August 4, 2020, which the record from this doctor's visit describes as "chronic recurrent left shoulder and upper arm pain without specific preceding injury." Ex. 4 at 12. She rated her pain as four out of ten, but ten out of ten at worst. Ex. 4 at 12. An examination showed full strength with no pain, but mildly limited range of motion. *Id.* at 13. Petitioner was diagnosed with impingement of left shoulder, adhesive capsulitis, and osteoarthritis. *Id.* at 13. A third steroid injection was administered. *Id.*

In addition to the aforementioned records, Petitioner has submitted an affidavit in support of her petition, signed on September 25, 2020. Ex. 1. She asserts that she received a flu vaccine on September 21, 2018 and felt pain "[r]ight before the needle was removed". *Id.* at 1. The affidavit also describes her course of treatment from September 2018 through February 11, 2019. However, it does not address the eighteen-month gap between February 2019 and August 2020.

Stephanie Dixon, Petitioner's daughter, also submitted an affidavit. Ex. 2. Ms. Dixon describes Petitioner's complaints of shoulder pain from September 21, 2018 through November of 2018 (and hence also admits discussion of the gap period). *Id.*

### III.     Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, he or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[4] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

### IV.     Analysis

Petitioner asserts, and Respondent does not contest, that she meets all of the core requirement for a Table SIRVA. Report at 8. Specifically, Petitioner had no history of pain of dysfunction of her left shoulder; pain occurred within 48 hours of vaccination; pain was

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

limited to her left shoulder; and no other condition or abnormality would explain Petitioner's shoulder pain. *See* 42 C.F.R. §§ 100.3(a)(XIV)(A); 100.3(c)(10) (Qualifications and Aids to Interpretation setting forth the requirements of establishing a SIRVA Table injury).

But the "severity requirement" mut also be satisfied. Because Petitioner received her vaccine on September 21, 2018, and alleges immediate pain (or at least pain within the 48-hour Table timeframe for a SIRVA injury), severity must be established at least through March 21, 2019 (six months after onset). This record, however, establishes pain only through February 11, 2019. Ex. 4 at 2. Thereafter it is silent for approximately eighteen months, despite Petitioner seeking treatment for other, unrelated issues which she does not attribute to the vaccine (for example, care related to hypertension or a "tickle in throat), and which otherwise could not be construed as associated. Ex. 3 at 22-24, 82.

Petitioner argues that severity is established. She sought care continuously for five months, and despite the eighteen-month gap her pain was later described as chronic and recurrent. Further, Petitioner asserts that mention of left shoulder osteoarthritis on January 17, 2020 is evidence of continuing left shoulder pain. Response at 4-5. However, in order for the reports of osteoarthritis to be relevant, Petitioner would need to preponderantly show that it is casually linked to her SIRVA, which she has not done.

Petitioner also argues that the intervening medical appointments were not occasions on which she would be expected to complain of shoulder issues. Rather, those treatment events were primarily for diverticulitis. Response at 4-5. In many circumstances (and especially in the early "stages" of SIRVA, when claimants often reasonably expect the pain will cease), I give weight to the fact that intervening medical treatment visits were specific for a distinguishable medical issue. *Dempsey v. Sec'y of Health & Hum. Servs.*, No. 18-0970, 2021 WL 1080563, at *4 (Fed. Cl. Spec. Mstr. Feb. 17, 2021); *Couch v. Sec'y of Health & Hum. Servs.*, No. 20-1246V, 2022 WL 1618116, at *6 (Fed. Cl. Apr. 7, 2022).

But here, the record shows that Petitioner did not delay in seeking treatment for her shoulder pain. On the contrary – within two months of vaccination alone, she sought medical assistance *four times* for her shoulder issues. Thus, the record supports the conclusion that the Petitioner was not one to avoid medical treatment when she felt it necessary – thereby corroborating the conclusion that she would have gone to the doctor for her SIRVA during the 18-month treatment gap had she still been experiencing sequelae. But she did not – indeed, there are several instances where records either note *no* acute problems (Ex. 3 at 82 (Petitioner stating that she "feels well overall and has no major acute complaints at this time")) or specifically do not describe shoulder problems

6

despite discussing seemingly minor complaints. *Id.* at 22-24 (January 17, 2020, appointment for right sided back pain and persistent "tickle in throat").

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. Such a lengthy treatment gap is too large to ignore in this case given the facts, and allows for the possibility of other intervening factors as more likely explanatory of Petitioner's subsequent shoulder complaints than her fall 2018 injury.

## Conclusion

The evidentiary record does not support Petitioner's contention that she experienced the residual effects or complications of her injury for more than six months after onset. Because Petitioner has failed to meet the severity requirement set forth in § 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** her claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[5]

**IT IS SO ORDERED.**

s/Brian H. Corcoran<br>
Brian H. Corcoran<br>
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.