# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1278V

| | |
|---|---|
| SHARON K. DIXON, | Chief Special Master Corcoran |
| Petitioner, | Filed: November 13, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*David Alexander Tierney*, Rawls Law Group (Richmond), Richmond, VA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On September 28, 2020, Sharon K. Dixon ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), which meets the Table definition or was caused, or in the alternative significantly aggravated, by the influenza ("flu") vaccine she received on September 21, 2018. Petition at 1¶ 2.

After determining that Petitioner had failed to provide sufficient evidence to support her claim - specifically in support of the six-month severity requirement - I granted

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent's motion (ECF No. 26) and dismissed Petitioner's claim. ECF No. 32; *see* Section 11(c)(1)(D)(i) (severity requirement).

On September 15, 2023, Petitioner filed a request for an award of $15,652.37 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs at ¶ 4, ECF No. 35. She did not address the statutory requirements of good faith and reasonable basis, however - prerequisites for any attorney's fees and costs award in unsuccessful cases. *See* Section 15(e)(1).

On September 29, 2023, Respondent filed a response, arguing that "[P]etitioner has failed to establish a reasonable basis for her claim [and] is not entitled to an award of fees and costs." Respondent's Response to Petitioner's Motion for Attorneys' Fees and Costs at 1, ECF No. 36. Specifically, he contends that "[P]etitioner made no attempt to explain why she did not seek further care for her left shoulder pain after her February 11, 2019 visit with Dr. Latimer, nor does she explain why she waited eighteen months to seek further care." *Id.* at 8. He therefore maintains that "[P]etitioner has not provided more than a scintilla of objective evidence that her alleged injury lasted for more than six months." *Id.* Petitioner did not file a reply.

For the reasons discussed below, Petitioner has failed to establish there was a reasonable basis for her claim. Thus, she is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

## I.     Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a

prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

3

presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.     Evidence Provided by Medical Records and Affidavits

Prior to vaccination, Petitioner had no history of prior left shoulder or arm pain. Exhibit 3 at 467, 536. She received the flu vaccine alleged as causal on September 21, 2018, during a visit to her primary care provider ("PCP"). Exhibit 3 at 12, 399.

Thereafter in September and October 2018, Petitioner visited her PCP on three occasions, complaining of left arm soreness and pain to her elbow, especially when lifting her arm. Exhibit 3 at 379-80, 399-400. Noting that this was a common post-vaccination reaction, the PCP initially advised Petitioner to pursue conservative treatments such as ice packs, Tylenol, and ibuprofen. *Id.* at 380, 399. He later prescribed a five-day course of prednisone. *Id.* at 379.

On November 7, 2018, Petitioner returned to her PCP for treatment of continued left shoulder and arm pain. Exhibit 3 at 334. She reported that the level of her pain decreased to two out of ten when taking the prescribed oral steroids but returned to seven out of ten thereafter. *Id.* An examination showed tightness in her upper trapezius and tenderness upon palpitation, but normal strength. *Id.* at 335-36. Exhibiting difficulty moving her shoulder over her head, Petitioner was assessed with cross syndrome or "impingement issue." *Id.* at 336. The PCP ordered a referral to orthopedics for a possible steroid injection and prescribed physical therapy ("PT"). *Id.*

Two days later, On November 9, 2018, Petitioner was seen by William Latimer, PA-C, at Indiana University Health Orthopedics, for ongoing left shoulder pain. Exhibit 4 at 6. She reported pain at a level of four to five with rest and seven to eight with movement. During his examination, PA Latimer observed full rotator cuff strength and range of motion (with pain) and anterior joint line tenderness. *Id.* He diagnosed Petitioner with impingement syndrome and administered a cortisone injection. *Id.* at 6-7.

Petitioner began PT on November 16, 2018. Exhibit 5 at 25. By November 30, 2018, her pain had decreased to one at rest and three with movement. *Id.* at 6. At a follow-up visit with PA Latimer on December 5, 2018, Petitioner reported improvements in her pain and range of motion, but a continued inability to reach behind her back and pain with overhead movement.  Exhibit 4 at 4. She continued to take Meloxicam[4] for her pain. *Id.*

---

[4] Meloxicam is "a nonsteroidal anti-inflammatory drug used in the treatment of osteoarthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1126 (32th ed. 2012).

In her January 2, 2019 discharge summary, following ten PT sessions, Petitioner's pain remained at the level reported in late November 2018, and she had met all long-term goals. Exhibit 5 at 6-7.

At her annual physical on January 16, 2019, Petitioner requested a refill of her Meloxicam prescription, which she was taking for her left shoulder pain. Exhibit 3 at 279. An examination revealed tenderness when her shoulder was palpated, but full range of motion and strength. *Id.* at 280. She was assessed with osteoarthritis "with likely impingement." *Id.*

Petitioner continued to report some residual pain at a follow-up appointment with PA Latimer on February 11, 2019, less than five months post-vaccination, but an examination showed full range of motion. Exhibit 4 at 2. PA Latimer administered a second steroid injection and directed Petitioner to seek follow-up visits as needed. *Id.*

Thereafter, the medical records reveal numerous doctor visits – for the next approximately eighteen months, in fact - but *no additional reports* of shoulder pain. This treatment is described as follows:

- A visit to urgent care on March 23, 2019, for treatment of acute sinusitis and lower abdominal pain (Exhibit 3 at 221-22);

- A visit to her primary care physician on March 25, 2019, for right flank pain and suprapubic pain for the past five days (*id.* at 220-22);

- A hospitalization from April 4, 2019, to April 5, 2019, for diverticulitis (*id.* at 168);

- A follow-up appointment regarding diverticulitis and to discuss hypertension, high blood pressure, and mild anxiety on April 26, 2019 (*id.* at 130-32);

- A visit to her PCP on July 16, 2019, to discuss diverticulitis and hypertension wherein Petitioner "feels well overall and has no major acute complaints at this time" (*id.* at 82); and

- A follow-up appointment on January 17, 2020 for right sided back pain, and a persistent "tickle in throat" since being sick in December that also lists osteoarthritis of the left shoulder as a chronic problem (*id.* at 22-24).

These medical records did not list shoulder pain as a chronic issue and contain only a few references left shoulder osteoarthritis with notations showing the last update

5

regarding this condition occurred in January 2019. *E.g., id.* at 70.[5] And, in contrast to the medical records from visits between the September 2018 vaccination and her February 2019, there is no record, during this lengthy period, when Petitioner complained of shoulder issues or sought treatment specific to such problems. *See id.* at 22-222.

Petitioner did not seek treatment for left shoulder pain until August 4, 2020, when she returned to PA Latimer, reporting "chronic recurrent left shoulder and upper arm pain without specific preceding injury." Exhibit 4 at 12. At this visit, Petitioner rated her pain as four out of ten, but ten out of ten at worst. *Id.* Upon examination, Petitioner exhibited full strength with no pain, but mildly limited range of motion. *Id.* at 13. PA Latimer diagnosed her with impingement of left shoulder, adhesive capsulitis, and osteoarthritis and administered a steroid injection. *Id.*

In addition to these medical records, Petitioner submitted affidavits from herself (Exhibit 1) and her daughter (Exhibit 2), both executed on September 25, 2022. In her affidavit, Petitioner asserted that she felt pain "[r]ight before the needle was removed." Exhibit 1 at 1. She also described her treatment from September 2018 through February 11, 2019, but failed to address the 18-month gap between February 2019 and August 2020. Similarly, in her affidavit, Petitioner's daughter described Petitioner's left shoulder complaints from only September through November of 2018. Exhibit 2.

### III. Analysis – Reasonable Basis

The evidence provides *some* support for Petitioner's claim that she suffered left shoulder pain potentially related to the flu vaccine she received. After complaining of her left shoulder pain only three days post-vaccination, she steadfastly pursued treatment through the end of December 2019, for approximately three months. Table onset seemes to be supported by this record, if nothing else.

However, that same record establishes that Petitioner experienced significant relief by late November 2018 – thus within only two months of vaccination. Following a steroid injection and PT sessions in November 2018, her pain had decreased significantly. It remained at this mild level through the remainder of PT attended in December 2018. Although she continued taking Meloxicam, Petitioner's pain remained at this mild level during a PCP visit in January 2019, and an orthopedic appointment on February 11, 2019, less than five months post-vaccination.

Petitioner was administered a second steroid injection at the orthopedic appointment, and thereafter did not return for treatment or mention continuing left

---

[5] This medical record also contains references to osteoarthritis in Petitioner's right and left knees. Exhibit 3 at 70.

shoulder symptoms for almost 18 months, despite seeking medical care for unrelated conditions during this time. Thus, the record strongly supports the proposition that Petitioner's injury had resolved – and within the Act's six-month period for establishing severity, rather than extending beyond before resolving.

Although Petitioner returned for treatment of left shoulder pain in August 2020, there is *no* evidence to link these later symptoms to the flu vaccine she received and any vaccine-related symptoms that she may have suffered for five months thereafter. And significantly, Petitioner has failed to provide an explanation for this considerable gap in treatment.

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. Such a lengthy treatment gap is too large to ignore given the facts, such as the improvement Petitioner reported as early as late November 2018. This lack of supporting evidence, especially of sequelae lasting more than six months post-vaccination, means the claim was untenable from the outset. And this is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.